**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Northern Division*

| | |
|---|---|
| Debra Jo Maresh, Individually and as Personal Representative of the Estate of Nicholas Delfosse<br>2401 Old Ocean Highway<br>Bolivia, North Carolina 28422<br><br>and<br><br>Thomas Delfosse, Jr., Individually and as Personal Representative of the Estate of Nicholas Delfosse<br>2 Starwood Court Apt. B<br>Middle River, Maryland 21220<br>(Baltimore County)<br><br>and<br><br>To the Use Of:<br>Jason O'Connor and Lisa O'Connor, as Next Friends of Lauren O'Connor, a minor child<br>335 Townsend Road<br>Essex, Maryland 21221<br>(Baltimore County)<br><br>and<br><br>To the Use Of:<br>Michael and Jennifer Greezicki, as Next Friends of Jax Delfosse, a minor child<br>222 Bright Oaks Drive<br>Bel Air, Maryland 21015<br>(Harford County)<br><br>       Plaintiffs,<br><br>v.<br><br>Robert S. Dean, Jr.<br>In his individual capacity as Warden of Jessup Correctional Institution<br>Jessup Correctional Institution<br>7800 House of Correction Road | Civil No.:<br><br><br><br>Jury Trial Demanded |

1

Jessup, Maryland 20794
(Anne Arundel County)

and

MHM Services, Inc. d/b/a Centurion
1593 Spring Hill Road
Suite 600
Vienna, VA 22182
  Serve on Resident Agent:
  The Corporation Trust, Incorporated
  2405 York Road Suite 201
  Lutherville-Timonium, Maryland 21093

and

Centurion, LLC
7700 Forsyth Blvd.
Suite 1800
St. Louis, MO 63105
  Serve on Resident Agent:
  The Corporation Trust, Incorporated
  2405 York Road Suite 201
  Lutherville-Timonium, Maryland 21093

and

John Doe Correctional Officers 1-5
*In their individual capacities*

and

John Doe Housing/Classification Officers 1-5
*In their individual capacities*

and

John Doe Mental Health/Medical Providers 1-5
*In their individual capacities*

and

John Doe Supervisory Defendants 1-3
*In their individual capacities*

      Defendants.

2

## COMPLAINT AND DEMAND FOR JURY TRIAL

## I.    Introduction

1.    Nicholas Delfosse was murdered by his cellmate, Daniel Myers, at Jessup Correctional Institution ("JCI") on about May 27, 2023. Myers specifically threatened to murder Mr. Delfosse in their shared cell, but the Defendants identified below did nothing to protect Mr. Delfosse.

2.    Plaintiffs, through undersigned counsel, hereby sue Defendants, Robert S. Dean, Jr., in his individual capacity as warden of JCI, Centurion of Maryland, LLC,  John Doe Correctional Officers 1-5, John Doe Housing/Classification Officers, John Doe Mental Health/Medical Providers, and John Doe Supervisory Defendants, for the assault, and wrongful death, of Nicholas Joseph Delfosse, and state in support:

## II.    Parties

### A. Plaintiffs

3.    Nicholas Delfosse was a citizen of Maryland and, at all relevant times, incarcerated at JCI in Anne Arundel County, Maryland.

4.    Mr. Delfosse died on May 27, 2023 after he was viciously assaulted by his cellmate at JCI, Daniel Myers.

5.    Plaintiff, Debra Jo Maresh, resides in Bolivia, North Carolina. Ms. Maresh brings this action in her individual capacity as Nicholas Delfosse's mother, and in her capacity as co-personal representative of the Estate of Nicholas Delfosse.

6.    Plaintiff, Thomas Delfosse, Jr., resides in Baltimore County, Maryland. Thomas Delfosse, Jr. brings this action in his individual capacity as Nicholas Delfosse's father, and in his capacity as co-personal representative of the Estate of Nicholas Delfosse.

7.      Plaintiffs have identified Michael and Jennifer Greezicki, as Next Friends of Jax Delfosse, a minor child, as use plaintiffs. Jax Delfosse is the natural daughter of Nicholas Delfosse. Pursuant to Md. Rule 15-1001(d), Plaintiffs will serve the required notice and pleadings to said use plaintiffs.

8.      Plaintiffs are aware that Mr. Delfosse had another daughter, Lauren O'Connor. Mr. Delfosse's parental rights as to Lauren were terminated several years before his death. Plaintiffs therefore do not believe that Lauren O'Connor has a viable claim but have identified her as a potential use plaintiff and, under Md. Rule 15-1001(d), Plaintiffs will serve the required notice and pleadings to Jason O'Connor and Lisa O'Connor, as Next Friends of Lauren O'Connor.

**B. Defendants**

9.      Jessup Correctional Institution is a prison facility maintained by the Maryland Department of Public Safety and Correctional Services ("DPSCS") located at 7800 House of Correction Road, Jessup, Maryland 20794 in Anne Arundel County.

10.      Defendant, Robert S. Dean, Jr. ("Warden Dean"), was, at all relevant times, the warden at JCI. He is named in his individual capacity. Warden Dean was responsible for the day-to-day operations of JCI, including classification and housing assignment of inmates, the supervision and training of correctional officers, case managers, and mental health staff, and the enforcement of inmate safety protocols. At all relevant times, Warden Dean was acting under color of state law.

11.      Defendant, MHM Services, Inc. d/b/a Centurion, was at all times, a for-profit private corporation organized under the laws of Delaware, with its principal place of

5

business in Virginia, that was licensed to do business in Maryland. At all relevant times, MHM was acting under color of state law.

12.     Defendant, Centurion, LLC, is a limited liability company organized under the laws of Delaware, with its principal place of business in Missouri, that was licensed to do business in Maryland. At all relevant times, Centurion acted under color of state law.

13.     At all relevant times, MHM and Centurion (referred to collectively as "Centurion") contracted with the state of Maryland to provide medical and mental health services to individuals incarcerated in Maryland state prisons, including JCI.

14.     Defendant, John Doe Correctional Officer 1, is an unidentified officer who was on duty when Myers attacked and murdered Nicholas Delfosse. Correctional Doe 1 could hear Nicholas Delfosse screaming for help during the attack. Additionally, another inmate informed Correctional Doe 1 that Mr. Delfosse needed help, which Correctional Doe 1 acknowledged, yet he took no action to intervene and protect Nicholas Delfosse from the attack. The identity of Correctional Doe 1 is unknown and cannot be found without access to records held by DPSCS to which Plaintiffs do not currently have access. Plaintiffs will substitute the true name of Correctional Doe 1 when they are able to ascertain their identity through discovery. At all relevant times, Correctional Doe 1 was acting under color of state law.

15.     Defendants, John Doe Correctional Officers 2 through 5, are unidentified officers who were aware of Daniel Myers' specific threat to murder his cellmate, Nicholas Delfosse, and/or who were on duty during the events alleged herein yet failed to act. The identities of Correctional Does 2 through 5 are unknown and cannot be found without

access to records held by DPSCS to which Plaintiffs do not currently have access. Plaintiffs will substitute the true names of Correctional Does 2 through 5 when they are able to ascertain their identities through discovery. At all relevant times, Correctional Does 2 through 5 were acting under color of state law.

16.    Defendants, John Doe Classification/Housing Officers, are unidentified officers and/or administrators who were responsible for the housing classification and cell assignment decisions at JCI and who made or approved the decision to place Nicholas Delfosse in a cell with Daniel Myers despite actual knowledge that the housing assignment posed an unreasonable risk of substantial danger to Nicholas Delfosse. The identities of the Housing Does are unknown and cannot be found without access to records held by DPSCS to which Plaintiffs do not currently have access. Plaintiffs will substitute the true names of the Housing Does when they are able to ascertain their identities through discovery. At all relevant times, the Housing Does were acting under color of state law.

17.    Defendants, John Doe Mental Health/Medical Providers ("Healthcare Does") are unidentified psychologists, psychiatrists, mental health counselors, case managers, nurses, or other healthcare professionals who, at all times relevant hereto, were employed by or contracted through Centurion to provide healthcare services at JCI. These individuals evaluated, treated, or received information regarding Daniel Myers' mental health and his explicit homicidal threats against any future cellmate, including Nicholas Delfosse, and failed to take appropriate clinical action including, but not limited to: documenting the threat in Myers's records; notifying classification and housing officials; recommending single-cell housing or administrative segregation; or escalating the threat

7

to the Warden or other supervisors. The identities of the Healthcare Does are unknown and cannot be found without access to records held by DPSCS to which Plaintiffs do not currently have access. Plaintiffs will substitute the true names of the Healthcare Does when they are able to ascertain their identities through discovery. At all relevant times, the Healthcare Does were acting under color of state law and within the scope of their employment or agency with Centurion.

18.     Defendants, John Doe Supervisory Defendants ("Supervisory Does), are unidentified supervisory correctional officers, assistant wardens, majors, captains, or other supervisory personnel at JCI who had actual or constructive knowledge of Daniel Myers's explicit homicidal threat and the resulting risk to any person housed with him, and who failed to implement or enforce policies, training, or protocols sufficient to prevent the foreseeable harm that resulted in Delfosse's death. The identities of the Supervisory Does are unknown and cannot be found without access to records held by DPSCS to which Plaintiffs do not currently have access. Plaintiffs will substitute the true names of the Supervisory Does when they are able to ascertain their identities through discovery. At all relevant times, the Supervisory Does were acting under color of state law.

### III.    Jurisdiction and Venue

19.     This Court has jurisdiction over Plaintiffs' federal civil rights claims pursuant to 28 U.S.C. §§ 1331, and supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

20.     Venue is proper in the United States District Court for the District of Maryland, Northern Division, pursuant to 28 U.S.C. § 1391 because the acts and omissions giving rise to Plaintiffs' claims occurred in Anne Arundel County Maryland.

**IV.    Allegations Common to All Counts**

Nicholas Delfosse's Death

21.     Nicholas Delfosse was twenty-seven years old at the time of his death. He was the father a minor child, Jax Delfosse. On information and belief, Mr. Delfosse fathered another child, Lauren O'Connor, but had forfeited his parental rights several years before his death.

22.     In March 2023, Nicholas Delfosse was discharged from an inpatient drug rehabilitation program.

23.     Following a probation violation related to earlier charges, he was ordered to serve a period of incarceration.

24.     He entered the Maryland Department of Public Safety and Correctional Services in about March 2023 and was assigned to JCI. At the time of his death, Delfosse had been incarcerated at JCI for approximately two months.

25.     Delfosse was not a violent offender. He was incarcerated for a non-violent probation violation and had no documented history of violence toward other inmates or staff at JCI.

26.     In May 2023, Nicholas Delfosse, following an altercation with another inmate, was placed in a cell with Daniel Myers.

27. On May 27th, Myers stabbed Mr. Delfosse multiple times inside their shared cell, fatally wounding Mr. Delfosse.

28. At least one inmate, who was nearby, heard Mr. Delfosse screaming for help and kicking the door of his cell to try to attract attention.

29. The inmate saw John Doe Correctional Officer 1 look in the direction of the subject cell but ignore Mr. Delfosse's pleas for help.

30. The inmate pointed out the commotion to John Doe Correctional Officer 1, who acknowledged hearing the noises, but still failed to act.

31. Mr. Delfosse was later found unresponsive in his cell with multiple stab wounds. He was pronounced dead at the scene by Anne Arundel County Emergency Medical Service personnel around 4:30 p.m.

32. An autopsy performed by the Office of the Chief Medical Examiner in Baltimore confirmed that Delfosse died from multiple stab wounds and ruled his death a homicide.

Myers's Prior Threat

33. Unbeknownst to Mr. Delfosse, just before this housing assignment, Myers, who had a history of violent behavior, underwent at least one psychiatric evaluation.

34. On information and belief, these psychiatric evaluations were performed by Defendants, Healthcare Does, who were acting under color of state law and within the scope of their employment with Centurion.

10

35. During at least one of these evaluations, Myers told the Healthcare Doe Defendants that, if they placed any other inmates in Myers's cell, Myers would murder that individual.

36. This statement was not hypothetical or abstract, but a specific, unconditional declaration of homicidal intent toward any person placed in Myers' cell.

37. On information and belief, JCI policies required the Healthcare Doe Defendants to communicate this specific threat to correctional staff, including the Correctional Doe Defendants, the Housing Doe Defendants, and the Supervisory Defendants.

38. Despite this specific threat, Mr. Delfosse was placed in a cell with Myers shortly thereafter.

39. Therefore, either:

    a. the Healthcare Doe Defendants, acting with deliberate indifference to their actual knowledge of the specific threat, failed to communicate Myers' threat to the aforementioned JCI staff; or

    b. Correctional Doe Defendants, the Housing Doe Defendants, and the Supervisory Defendants, acting with deliberate indifference, ignored the specific threat of this substantial danger to Mr. Delfosse by assigning him to share a cell with Myers.

40. Not one of the correctional officers, psychologists, case managers, classification officials, or supervisors who knew about Myers' specific threat took any

action to protect Mr. Delfosse from the imminent danger of severe bodily harm threatened by Myers.

41. When investigators interviewed Myers after the incident, Myers said:

**"Last week, I told them if you put me in a cell with someone, I am going to kill them."**

42. Myers was subsequently charged with first-degree murder in the Circuit Court for Anne Arundel County. Myers pled guilty to the murder of Nicholas Delfosse in February 2024 and was sentenced to fifty additional years in prison.

## V.    Causes of Action

### Count I
### 42 U.S.C. § 1983 – Eighth Amendment – Deliberate Indifference to Substantial Risk of Harm
**Against Warden Dean (Individual Capacity); John Doe Correctional Defendants (Individual Capacity); John Doe Housing/Classification Defendants (Individual Capacity); John Doe Supervisory Defendants (Individual Capacity).**

43. All preceding paragraphs are incorporated herein.

44. At all relevant times, each of the Defendants named in this Count was acting under color of state law within the meaning of 42 U.S.C. § 1983.

45. The Eighth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, prohibits cruel and unusual punishment and imposes on prison officials a duty to protect inmates from a substantial risk of serious harm.

46. A prison official violates the Eighth Amendment when: (1) the inmate is incarcerated under conditions posing a substantial risk of serious harm; and (2) the official is deliberately indifferent to that risk.

12

47.     Myers communicated to Defendants a specific threat to kill any person housed in his cell during a psychiatric evaluation at JCI.

48.     By placing Mr. Delfosse in a cell with Myers, less than one week after Myers communicated his threat to kill his next cellmate, Defendants created an unreasonable and foreseeable risk of serious harm.

49.      Each Defendant named in this Count had actual, subjective knowledge that Myers posed a substantial risk of serious harm to Mr. Delfosse once Mr. Delfosse was placed in a cell with Myers.

50.     Each Defendant named in this Count acted with deliberate indifference by consciously disregarding the known risk by failing to take any of the following plainly available protective measures, among others: transferring Myers to single-cell housing; transferring Myers to administrative segregation; or preventing Delfosse's placement with Myers.

51.     As a direct and proximate result of these Defendants' deliberate indifference, Nicholas Delfosse suffered extreme emotional and physical pain and was murdered. Plaintiffs have suffered and continue to suffer damages as set forth above.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as the nature of the case requires.

**Count II**
**42 U.S.C. § 1983 – Eighth Amendment – Deliberate**
**Indifference to Substantial Risk of Harm**

**Against Defendant John Doe Correctional Officer 1
in his Individual Capacity**

52.     All preceding paragraphs are incorporated herein.

53.     At all relevant times, Defendant, John Doe Correctional Officer 1 was acting under color of state law within the meaning of 42 U.S.C. § 1983.

54.     The Eighth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, prohibits cruel and unusual punishment and imposes on prison officials a duty to protect inmates from a substantial risk of serious harm.

55.     A prison official violates the Eighth Amendment when: (1) the inmate is incarcerated under conditions posing a substantial risk of serious harm; and (2) the official is deliberately indifferent to that risk.

56.     Defendant, John Doe Correctional Officer 1, heard Mr. Delfosse plead for help and kick and bang on his cell door while trying to fend off the attack from Myers.

57.     Another inmate saw John Doe Correctional Officer 1 look in the direction of Mr. Delfosse's cell, apparently in reaction to Mr. Delfosse's cries for help, but John Doe Correctional Officer 1 failed to render aid.

58.     The inmate got John Doe Correctional Officer 1's attention to make sure he knew that Mr. Delfosse needed help, but John Doe Correctional Officer 1 merely responded "I know" and continued to ignore the substantial and imminent danger facing Mr. Delfosse.

59.     John Doe Correctional Officer 1 had actual, subjective knowledge of the substantial risk of serious harm to Mr. Delfosse yet acted with deliberate indifference by

consciously disregarding the known risk by failing to intervene in the attack to protect Mr. Delfosse from serious injury and death.

60.    As Mr. Delfosse was still capable of calling for help, he was still conscious and moving, and his death was preventable if John Doe Correctional Officer 1 had not been deliberately indifferent to Mr. Delfosse's safety.

61.    As a direct and proximate result John Doe Correctional Officer 1's deliberate indifference, Nicholas Delfosse suffered extreme emotional and physical pain and was murdered. Plaintiffs have suffered and continue to suffer damages as set forth above.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as the nature of the case requires.

### Count III
### 42 U.S.C. § 1983 – Eighth Amendment – Deliberate Indifference to Substantial Risk of Harm Against Defendants John Doe Mental Health/Medical Providers

Paragraphs 1 through 42 are adopted and incorporated into this Count.

62.    At all relevant times, each Defendant named in this Count was acting under color of state law within the meaning of 42 U.S.C. § 1983.

63.    At all relevant times, Centurion was responsible for providing mental health care to inmates at JCI, including performing psychiatric evaluations like the one performed on Myers the week before he murdered Mr. Delfosse.

64.     At all relevant times, Defendants John Doe Mental Health/Medical Providers were the actual or apparent agents of Centurion and acting within the scope of their employment or agency.

65.     The Eighth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, prohibits cruel and unusual punishment and imposes on private entities acting under color of state law a duty to protect inmates from a substantial risk of serious harm.

66.     A prison official violates the Eighth Amendment when: (1) the inmate is incarcerated under conditions posing a substantial risk of serious harm; and (2) the official is deliberately indifferent to that risk.

67.     Myers made a specific threat to kill any person housed in his cell during a psychiatric evaluation at JCI.

68.     On information and belief, DPSCS policy required the Healthcare Doe Defendants to evaluate inmates for homicidal ideation.

69.     The Healthcare Doe Defendants had a duty to, at a minimum, warn prison officials about Myers' threats and recommend that Myers be housed alone because he posed a specific and substantial risk of harm to any inmate assigned to share a cell with Myers, including Mr. Delfosse.

70.     Myers' specific threat of serious harm was communicated directly to the Healthcare Doe Defendants, who received the communication while acting under color of state law and in the course of their employment or agency with Centurion.

16

71.     The Healthcare Doe Defendants acted with deliberate indifference by consciously disregarded the known risk posed by Myers to any cellmate by failing to take appropriate clinical action including, but not limited to: documenting the threat in Myers' records; notifying classification and housing officials at JCI; recommending single-cell housing or administrative segregation; referring Myers for emergent psychiatric treatment; or escalating the threat to the Warden or other supervisors.

72.     As a direct and proximate result of these Defendants' deliberate indifference, Nicholas Delfosse suffered extreme emotional and physical pain and was murdered. Plaintiffs have suffered and continue to suffer damages as set forth herein.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as the nature of the case requires.

**Count IV**
**42 U.S.C. §1983 Supervisory Liability**
**Against Defendants Warden Dean (Individual**
**Capacity); and John Doe Supervisory Defendants**
**(Individual Capacity)**

73.     Paragraphs 1 through 60 are adopted and incorporated into this Count.

74.     Warden Dean and the Supervisory Doe Defendants had actual knowledge that correctional staff and healthcare staff at JCI routinely failed to act to mitigate the serious risk of violence posed by certain inmates despite actual knowledge of specific threats.

75.     Despite this knowledge, Warden Dean and the Supervisory Doe Defendants acted with deliberate indifference by, among other things, failing to implement or enforce policies at JCI that would prevent violent inmates who made specific threats of violence from sharing cells with other inmates.

76.     Warden Dean and the Supervisory Doe Defendants knew that this failure to act was reasonably likely to result in inmates, including Mr. Delfosse, being deprived of their constitutional right to, among other things, be free from known risks of serious physical harm.

77.     Warden Dean and the Supervisory Doe Defendants knew that correctional and healthcare staff were habitually failing to act to document and report the serious risk of violence posed by certain inmates despite actual knowledge of specific threats, and that this conduct posed a pervasive and unreasonable risk of constitutional injuries to inmates, including Mr. Delfosse.

78.     Warden Dean and the Supervisory Doe Defendants acted with deliberate indifference by tacitly authorizing these dangerous practices.

79.     As a direct and proximate result of these violations by Warden Dean and the Supervisory Doe Defendants, Nicholas Delfosse suffered extreme emotional and physical pain and was murdered. Plaintiffs have suffered and continue to suffer damages as set forth herein.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and

punitive damages, in an amount to be determined at trial, and such other and further relief as the nature of the case requires.

**Count V**
**42 U.S.C. §1983 *Monell* Liability**
**Against Defendant MHM and Centurion, LLC**
**(collectively, "Centurion")**

80.     Paragraphs 1 through 41 and 61 through 72 are adopted and incorporated into this Count.

81.     A private entity acting under color of state law may be held liable under 42 U.S.C. § 1983 where an official policy or widespread custom of that entity caused a constitutional deprivation, or where the entity's failure to train employees in constitutionally required conduct amounts to deliberate indifference.

82.     At all relevant times, Centurion was acting under color of state law.

83.     Under Centurion's contract with the State of Maryland, its mental healthcare providers, including the Healthcare Doe Defendants, when performing psychiatric evaluations, are required to assess whether the inmate poses a substantial risk of danger to themselves or others.

84.     Based on this assessment, Centurion is required to report known risks of substantial harm and make recommendations for housing conditions that minimize said risks.

85.     At all relevant times, Centurion maintained an official custom or policy of failing adequately assess these risks, failing to document known dangerous conditions, and

failing to make housing condition recommendations to protect inmates from an unreasonable risk of danger.

86. Centurion's conduct was so widespread that it constitutes an official policy or custom.

87. For example, following the 2016 suicide of an inmate at Eastern Correctional Institution, DPSCS investigators found that an MHM/Centurion psychiatrist lied to investigators about making a housing recommendation to minimize the risk of self-harm. The psychiatrist told investigators that he communicated an instruction to prison officials to place the inmate in a cell with another prisoner and that he completed a "Close Observation Form." These statements were both false.

88. Centurion's failure to provide adequate mental health care, including its failure to make appropriate housing recommendations, stems, at least in part, from its failure to maintain adequate records.

89. Several audits conducted over the years of MHM/Centurion's contract to provide mental health services found that MHM/Centurion habitually failed to provide adequate staff to meet the mental health care needs of DPSCS and failed to adequately document patient evaluations and conditions in the electronic medical records. A 2007 audit found that MHM could not locate over 500 patient charts due to its failure to maintain electronic medical records.

90. Centurion's inadequate record keeping remains under court-appointed monitoring pursuant to a long-running settlement agreement with the ACLU, further

20

showing that Centurion is aware that its practices are linked to the deprivation of constitutional rights of inmates and detainees.

91. Centurion knew that its policy or custom of failing to adequately document that inmates pose a serious risk of danger to themselves or others and failing to make appropriate housing recommendations for inmates with suicidal or homicidal ideation were reasonably likely to result in deprivation of constitutional rights.

92. Centurion was deliberately indifferent to the constitutional rights of inmates, including Mr. Delfosse, by adopting the policy of custom in the preceding paragraph.

93. The policies/customs in the preceding paragraph were the driving force behind Plaintiffs' injuries.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as the nature of the case requires.

**Count VI**
**<u>Negligence</u>**
**Against All Defendants**

94. All preceding paragraphs are incorporated herein.

95. Defendants owed Mr. Delfosse a duty to use reasonable care to protect him from an unreasonable risk of violence from other inmates.

96. Defendants breached that duty by, among other things:

    a. Failing adequately assess the danger posed by Myers to other inmates, including Mr. Delfosse;

21

b. Failing to protect Mr. Delfosse from violence;

c. Housing Mr. Delfosse with Myers even after Myers made a specific threat of homicide; and

d. Failing to intervene to protect Mr. Delfosse even after they knew he was being assaulted.

97. As a direct and proximate result of the Defendants' negligence, Nicholas Delfosse suffered severe physical and emotional injuries and death.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as the nature of the case requires.

### Count VII
### Wrongful Death
### Against All Defendants

98. All preceding paragraphs are incorporated herein.

99. Plaintiffs, Debra Maresh and Thomas Delfosse, Jr., and use plaintiffs identified above are the primary wrongful death beneficiaries under Md. Code Ann., Cts. & Jud. Proc. § 3-904(a).

100. Defendants' acts and omissions were the proximate cause of Mr. Delfosse's death.

101. As a result, Plaintiffs suffered damages, including, but not limited to, loss of relationship, counsel, advice, and companionship.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount to be determined at trial, but in excess of $75,000.00, plus interest, costs and attorneys' fees, and punitive damages, in an amount to be determined at trial, and such other and further relief as the nature of the case requires.

## VI.    Demand for Jury Trial

Plaintiffs demand a Jury Trial.

Dated: May 26, 2026

Respectfully submitted,

/s/ *Nicholas Bonadio*

Nicholas C. Bonadio (# 13679)
nbonadio@kblitigation.com
Thomas W. Keilty, III (#18992)
tkeilty@kblitigation.com
Keilty Bonadio, LLC
One South Street – Suite 2125
Baltimore, Maryland 21202
410-469-9953

*Counsel for Plaintiffs*